IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MOSHE TAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:24-CV-00868-ALM-AGD |
| v. | § | |
| | § | |
| ANDREW HEDRICK, et al., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Pending before the court is Defendants Andrew Hedrick, Julie Hedrick, Awesome Enterprises, LLC, TK7 Products, LLC, Greenpath Technologies, LLC, Green Path Tech, LLC, and Trucking Tower, LLC's ("Defendants") Motion to Dismiss, with Brief (Dkt. #23). Having reviewed Defendants' Motion, Plaintiff Moshe Tal's ("Plaintiff" or "Tal") Response (Dkt. #24), Defendants' Reply (Dkt. #26), and Plaintiff's Sur-Reply (Dkt. #27), the court recommends that Defendants' Motion to Dismiss be granted in part.

**BACKGROUND**

On September 27, 2024, Plaintiff filed a Complaint for False Designation of Origin in the United States District Court for the Eastern District of Texas (Dkt. #1). Plaintiff seeks relief from "Defendants' repeated, willful and egregious misappropriation of Plaintiff's 'TK7' trademark related to [Plaintiff]'s trade secret formulas of unique and innovative fuel and oil additives, sold in commerce continuously since 1982." (Dkt. #1 at p. 1).

On October 23, 2024, Defendants filed their Motion to Dismiss, with Brief (Dkt. #23), alleging Plaintiff's case "is a blatant attempt to circumvent and disrupt long-pending litigation in

REPORT AND RECOMMENDATION

another forum, to harass litigation adversaries . . . , and to needlessly increase the time, cost and expense of litigation relating to entities owned and controlled by [Plaintiff]." (Dkt. #23 at p. 1). On November 6, 2024, Plaintiff filed a Response in opposition (Dkt. #24). On November 13, 2024, Defendants filed a Reply in support (Dkt. #26). On November 17, 2024, Plaintiff filed a Sur-Reply in opposition (Dkt. #27). Defendants' Motion to Dismiss, with Brief (Dkt. #23) is now fully briefed and ripe for consideration.

## LEGAL STANDARD & ANALYSIS

Nearly four years ago, on November 30, 2020, TK7 Products, LLC, a Defendant in this lawsuit, filed a separate lawsuit in the District Court in and for Oklahoma County, Oklahoma ("Oklahoma County District Court") in Cause No. CJ-2020-5706 ("OK Lawsuit") (Dkt. #23 at p. 2; Dkt. #23, Exhibit 1). The OK Lawsuit was filed against Plaintiff and his company, Tal Tech, LLC (Dkt. #23, Exhibit 1). In the OK Lawsuit, TK7 Products, LLC sought declaratory relief and damages for breach of contract based on an agreement the parties entered into in 2015 related to TK7-branded fuel and oil additives (the "2015 Agreement") (Dkt. #23, Exhibit 1). Based on the parties' briefing, and from what the court can take judicial notice, the OK Lawsuit has not concluded.[1]

On September 27, 2024, after engaging in litigation in the OK Lawsuit for nearly four years, Plaintiff filed the instant lawsuit against several Defendants, including the plaintiff from the OK Lawsuit, TK7 Products, LLC (Dkt. #1). In the instant case, Plaintiff alleges two causes of action: "Federal False Designation of Origin and False Descriptions Against All Defendants" and

---

[1] Oklahoma State Courts Network (last visited August 29, 2025) https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2020-5706 (showing that the OK Lawsuit was closed on May 7, 2025, but that the most recent docket entry was entered on August 27, 2025).

"State Law Trademark Infringement." (Dkt. #1 at pp. 9–11). Plaintiff's claims stem from actions Defendants allegedly took related to the 2015 Agreement (Dkt. #1 at pp. 4–9).

Based on the OK Lawsuit, which Defendants claim has "the same core nucleus of operative facts" as the instant lawsuit, Defendants filed a Motion to Dismiss, with Brief (Dkt. #23). As the basis for the Motion to Dismiss, Defendants ask this court to abstain from deciding this case while the first-filed OK Lawsuit is being adjudicated (Dkt. #23 at pp. 5–8). As such, Defendants ask the court to transfer, abate, or dismiss the instant lawsuit (Dkt. #23 at pp. 5–8). In support of their contention, Defendants cite *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id.* at 817. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* (citations omitted). "Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818.

Courts following the *Colorado River* decision consider the following six factors when faced with concurrent federal and state lawsuits: (1) jurisdiction over any res or property; (2) the inconvenience of one forum relative to the other; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law will be applied; and (6) adequate protection in state court. *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189–93 (5th Cir. 1988). Here, the six factors collectively weigh in favor of abstention.

First, this case does involve res or property over which a court has taken control; namely, to the extent a valid trademark exists, the Oklahoma County District Court has exercised jurisdiction over the mark for years now. Thus, the first factor weighs in favor of abstention.

Second, the Oklahoma County District Court is clearly the more convenient forum. That is, "the Oklahoma courthouse is the most proximate to where all of the substantive facts occurred and where all of the defendant entities and all of [Plaintiff]'s companies are located." (Dkt. #23 at p. 8) (emphasis in original). Plaintiff argues this court "is the most proximate to [Plaintiff]" and that actions he took related to the instant lawsuit occurred in this District. However, Plaintiff's physical presence in this District does not outweigh the evidence supporting convenience of the Oklahoma County District Court. As such, the court finds that the second factor weighs in favor of abstention.

Third, the desirability of avoiding piecemeal litigation greatly favors abstention. The OK Lawsuit and this lawsuit are both centered around the 2015 Agreement. Should Defendants in this lawsuit be successful in the OK Lawsuit, Plaintiff's likelihood of success in this lawsuit could be affected. On the other hand, should Plaintiff in this lawsuit prevail in the OK Lawsuit, his likelihood of success in this lawsuit could be affected. The two lawsuits are opposite sides of the same coin. The OK Lawsuit is based on a breach of contract related to the 2015 Agreement, as well as declaratory judgment. Defendants here, as the plaintiff in the OK Lawsuit, ask the Oklahoma County District Court to determine that the parties had a contractual relationship, that this Plaintiff allowed the OK Lawsuit plaintiff to use the "tradename and domain name, and did not object to such adoption and use in commerce," that this Plaintiff wrongfully terminated the contract "and, in connection therewith, demanded relinquishment of assets, including the intellectual property developed by" the OK Lawsuit plaintiff (Dkt. #23, Exhibit 1 at pp. 3–4). In

this lawsuit, Plaintiff asks the court to determine a federal and state cause of action based on the same purported intellectual property (Dkt. #1). Accordingly, because the two lawsuits both rely largely on the 2015 Agreement and the business relationship between the parties, allowing the OK Lawsuit and this lawsuit to progress concurrently could lead to conflicting rulings.

Plaintiff argues that the two lawsuits are not substantially similar (Dkt. #24 at p. 3). The court disagrees. Further underscoring the parallels between this lawsuit and the OK Lawsuit, the court notes the similarities between the Complaint in this lawsuit (Dkt. #1) and Tal's Verified <u>Urgent</u> Application for a Temporary Restraining Order Combined with Motion and for Preliminary & Permanent Injunction – To <u>Stop</u> Plaintiff and Its "Managers" from Claiming Ownership to TK7's Branded Additives Invented by Moshe Tal and TK7's Related Intellectual Property ("IP") with Supportive Brief ("Application for TRO") in the OK Lawsuit (Dkt. #23, Exhibit 4).

For example, the Complaint and the OK Lawsuit Application for TRO nearly mirror one another in at least the following instances:

1. <u>Complaint</u>: "This action arises from Defendants' repeated, willful and egregious misappropriation of Plaintiff's 'TK7' trademark relating to Tal's trade secret formulas of unique and innovative fuel and oil additives, sold in commerce continuously since 1982." (Dkt. #1 at p. 1).
   <u>OK Lawsuit Application for TRO</u>: Tal "seek[s] an immediate TRO to refrain TPL and Respondents from claiming any 'inventorship' or ownership rights to Tal's invented unique trade secret formulas to numerous fuel and oil additives, known collectively by their famous brand name 'TK7 Products' (since 1982)." (Dkt. #23, Exhibit 4 at p. 2).

2. <u>Complaint</u>: "Despite written warnings to stop using and claiming any ownership to Tal's TK7 trademark, Defendants have continued to infringe Plaintiff's trademark rights." (Dkt. #1 at p. 2).
   <u>OK Lawsuit Application for TRO</u>: Tal alleges TK7 Products, LLC is "claiming to be the person[] that invented/'conceived' all of Tal's trade secret formulas to the fuel and oil additives known collectively by their famous brand name 'TK7 Products.'" (Dkt. #23, Exhibit 4 at p. 3).

REPORT AND RECOMMENDATION – Page 5

3. Complaint: "Below is an image Defendants used in connection with promoting its products that infringe on Plaintiff's TK7 tradename and logo." (Dkt. #1 at p. 5).
   OK Lawsuit Application for TRO: Tal alleges TK7 Products, LLC "also packaged other generic cheaper fuel additives packed in their own different type of containers and placed 'TK7 Products' labels on them, with the distinguished TK7 Logo design (Tal created in 1982) – misleading parties interested in Tal's invented reputable TK7 Products . . . ." (Dkt. #23, Exhibit 4 at pp. 3–4).

4. Complaint: "In August 2015, Plaintiff . . . entered into a Non-Exclusive Distribution Agreement with A. Hedrick, Doug Switzer[, . . .] and AE ('2015 Agreement')." (Dkt. #1 at p. 5).
   OK Lawsuit Application for TRO: "Specifically, Tal prays this Court of Equity to enforce narrow, clear and unambiguous provisions of the Non-Disclosure and No-Use Agreements ('NDA') executed by Hedrick . . . , including confidentiality provisions of the 2015 Non-Exclusive distribution Agreement ('2015 Agreement') . . . ." (Dkt. #23, Exhibit 4 at p. 2).

5. Complaint: Claiming the oil additive is Plaintiff's "life's work . . . that he has cultivated for over 40 years" and that "Tal has been using the tradename 'TK7' a TK7 logo in commerce since 1982. The TK7 name and logo were used by Tal in commerce in connection with additives that reduce[] emissions and improve the efficiency of fuel and oil." (Dkt. #1 at p. 4).
   OK Lawsuit Application for TRO: "In 1982, Tal personally and solely created the unique, distinctive, arbitrary and a fanciful 'TK7' trade name and had established his exclusive 'first-user' copyright to the TK7 trade name on July 8, 1982 . . . ."(Dkt. #23, Exhibit 4 at p. 4).

6. Complaint: "Plaintiff discovered that A. Hedrick, in February 2019, had surreptitiously formed [TK7 Products, LLC] to compete with Plaintiff using Plaintiff's TK7 trademark, logo, testing data and product descriptions without Plaintiff's permission." (Dkt. #1 at p. 5).
   OK Lawsuit Application for TRO: "Tal NEVER gave Hedrick the alleged 'Written Consent' to form 'TK7 Products, LLC'"; "Tal NEVER agreed to, nor ever give [sic] his consent to transfer the subject 2015 Contract that was granted strictly to Awesome (through both partners: Hedrick and Switzer) – to TK7 Products LLC, which was secretly formed by Hedrick; nor did Tal EVER … 'acknowledge in writing' … the existence of TK7 Products LLC, because Tal DID NOT discover until October 19, 2020 – for the first time – that Hedrick secretly formed the LLC – in violation of the NDA he executed and the confidentiality provision of the subject 2015 Contract"; and "When Tal discovered, in late October 2020, for the first time, that Hedrick unlawfully formed the entity called 'TK7 Products, LLC.'" (Dkt. #23, Exhibit 4 at pp. 6, 7).

7. <u>Complaint</u>: Attached to the Complaint is a Verified Statement of David Goodnight regarding a Mutual Non-Disclosure and No Use Agreement between Mr. Goodnight and Defendants (Dkt. #1, Exhibit 2).
<u>OK Lawsuit Application for TRO</u>: The Application for TRO cites the same agreement. (Dkt. #23, Exhibit 4 at p. 9).

Thus, as the foregoing illustrates, the evidence, factual background, and parties involved in both lawsuits contain substantial overlap. Accordingly, the avoidance of piecemeal litigation weighs in favor of abstention.

Fourth, the order in which jurisdiction was obtained clearly favors abstention. The OK Lawsuit was filed on November 30, 2020, and has been litigated consistently since that date with an abundance of pleadings and orders. Indeed, the most recent docket entry in the OK Lawsuit was entered on August 27, 2025, as discussed, *supra*. Meanwhile, the instant lawsuit was filed on September 27, 2024, nearly four years after the OK Lawsuit was initiated (Dkt. #1). Accordingly, this factor favors abstention.

Fifth, both federal and state law will be applied. The OK Lawsuit is based on a declaratory judgment and breach of contract, applying state law (Dkt. #23, Exhibit 1). The instant lawsuit is based on federal and state trademark claims (Dkt. #1). As such, neither case is based on a wholly federal claim. The court notes that the presence of a federal question "must always be a major consideration weighing against surrender [of jurisdiction]," and "the presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston Ins. Co.*, 844 F.2d at p. 1193 (internal citation and quotation marks omitted). However, this court is not recommending surrender of jurisdiction. Rather, because the adjudication of the OK Lawsuit may resolve the issues raised in this case, the court finds that this case represents a rare circumstance in which abstention would be appropriate. Thus, this factor weighs in favor of abstention.

Sixth, Defendants argue that "[t]here is no serious argument that the Oklahoma court cannot afford adequate relief." (Dkt. #23 at p. 8). Plaintiff argues that "[h]e cannot raise his federal

REPORT AND RECOMMENDATION – Page 7

claims in" the Oklahoma County District Court (Dkt. #24 at p. 4). Regardless, "[a] party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings." *Evanston Ins. Co.*, 844 F.2d at 1193. However, as discussed, *supra*, Plaintiff may be divested of any claims in this court based on the outcome of the OK Lawsuit, which is still being litigated. In that regard, it is unclear whether parallel proceedings are appropriate. Because this factor "can only be a neutral factor or one that weighs against, not for, abstention," *id.*, the court finds this factor to be neutral.

The court further finds that transferring this case to a state court in Oklahoma would be inappropriate as this case involves a federal question as well as a Texas state law cause of action. Additionally, the instant lawsuit is in the early stages of litigation with a pending motion to dismiss. As such, the court is required to take Plaintiff's well-pleaded allegations as true at this stage. And given the well-pleaded allegations in the Complaint, it is plausible that Plaintiff may be successful on the merits. Thus, dismissal of this matter would also be inappropriate. For the reasons discussed herein, the court finds abatement of the instant lawsuit is appropriate, with the parties providing periodic updates to the court.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Defendants' Motion to Dismiss, with Brief (Dkt. #23) be **GRANTED IN PART**. The court further recommends that this case be **ABATED** pending the resolution of Cause No. CJ-2020-5706 filed in the District Court of Oklahoma County, Oklahoma. The court finally recommends that, during the abatement, the parties submit a Joint Status Report every 60 days until such time that the abatement is lifted.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 3rd day of September, 2025.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE